**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

KIM SHANK,

       Plaintiff,         :
                                : CIVIL ACTION
      vs.                  :
                                : NO. 15-CV-5319
FISERV, INC.,            :
                                :
         Defendant.      :

**<u>MEMORANDUM</u>**

Joyner, J.                                  January    , 2016

      Before the Court are Defendant's Motion to Dismiss and to Compel Arbitration (Doc. No. 3), Plaintiff's Response in Opposition thereto (Doc. No. 4), and Defendant's Reply in Further Support thereof (Doc. No. 7). For the reasons below, the Motion to Dismiss and to Compel Arbitration is DENIED. An Order follows.

## I. Factual and Procedural Background

      Plaintiff Kim Shank is a 57-year-old women who was employed by Defendant, Fiserv, Inc., from about May 16, 2007 until about March 20, 2014. Compl. ¶¶ 2, 23, 51, 52. Ms. Shank worked as a Quality Analyst in the Defendant's King of Prussia location. Compl. ¶¶ 7, 24. On or about January 14, 2014, Plaintiff was involved in a serious car accident. Compl. ¶ 38. Plaintiff took medical leave

1

from Fiserv, pursuant to FMLA, to treat her injuries from the accident. Compl. ¶ 40. Plaintiff returned to work on March 19, 2014. Compl. ¶ 42. Plaintiff's doctor cleared her return to work, though she was not fully recovered when she returned. Compl. ¶¶ 42-45. The injuries from Plaintiff's accident rendered her disabled. Compl. ¶ 39. Defendant was aware of Plaintiff's disability. Compl. ¶¶ 45, 46, 48. Defendant terminated Plaintiff's employment on March 20, 2014. Compl. ¶¶ 51, 52.

Defendant told Ms. Shank she was being terminated as part of a layoff that had occurred one month earlier and because her position was eliminated due to a reorganization. Compl. ¶¶ 52, 53. Plaintiff believes the Defendant's stated reasons for terminating her are pretextual. Compl. ¶ 62. She believes she was illegally terminated because of her disability, age, national origin, and/or for taking FMLA leave. Compl. ¶ 68.

Plaintiff filed her Complaint in this Court on September 24, 2015. She alleges the Defendant violated the Americans with Disabilities Act, the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, the Pennsylvania Human Relations Act, and the Family and Medical Leave Act. Defendant filed the present motion to dismiss and compel arbitration on November 25, 2015.

2

## II. Standard of Review

"As a threshold matter, the Court must determine whether to consider the Defendant's Motion to Compel Arbitration using a motion to dismiss standard pursuant to Rule 12(b)(6) or whether to order the parties to conduct discovery on the question of arbitrability before proceeding to review a renewed motion to compel arbitration using a summary judgment standard." Morina v. Neiman Marcus Grp., Inc., Civil Action No. 14-1394, 2014 WL 4933022, at *6 (Oct. 1, 2014) (citing Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 776 (3d Cir. 2013)). The Third Circuit recently clarified that "when it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.' But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then 'the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question.'" Guidotti, 716 F.3d at 776 (alteration

3

in the original) (quoting <u>Somerset Consulting, LLC v. United Capital Lenders, LLC</u>, 832 F.Supp.2d 474, 482 (E.D. Pa. 2011)).

This guidance looks for a clear intention <u>to</u> arbitrate, but says nothing about when it is clear from the face of the documents relied on in the pleadings that there is <u>no</u> intention to arbitrate.[1] <u>Guidotti</u> sought to strike a balance between the competing goals of efficiency in the Federal Arbitration Act ("FAA")[2] and traditional contract interpretation. <u>See</u> <u>Id.</u> at 773. When a court applies the summary judgment standard to a motion to dismiss to compel arbitration, that court limits discovery to the issue of arbitration. This accommodates the claim that, under basic contract interpretation principles, a valid agreement to arbitrate does not exist, while still promoting speedy and efficient

---

[1] We find that for <u>Guidotti</u> purposes, the "complaint" includes the motion at hand and the agreement attached thereto. <u>See</u> <u>Golden Gate Nat. Sr. Care, LLC v. Sulpizio</u>, No. 1:15-CV-00174, 2015 WL 4878348, at *3 (M.D. Pa. Aug. 14, 2015).

[2] "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C.A. § 4.

resolution if the parties did agree to arbitrate. Here, however, it is clear from the face of the documents relied on in the pleadings that there is no valid agreement to arbitrate. Further briefing on the issue is therefore unnecessary, and we decide this Motion under the Rule 12(b)(6) standard.

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), we look to whether, under any plausible reading of the pleadings, the plaintiff would be entitled to relief. Id. at 772 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

## III. Arbitration Agreement

On April 17, 2007 Plaintiff signed a "Mutual Agreement to Arbitrate Claims" ("Agreement"). Doc. No. 3, Ex. A. The Defendant argues that this Agreement contractually obliges the Plaintiff to arbitrate the claims in her Complaint. The Plaintiff argues that the arbitration agreement is not valid, therefore she is entitled to pursue her claims in court.

Questions of arbitrability are governed by the FAA. See Khan v. Dell Inc., 669 F.3d 350, 354 (3d Cir. 2012) (internal citation omitted). The FAA indicates a "strong federal policy in favor of resolving disputes through arbitration." Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 522 (3d Cir.

2009). Arbitration, however, "is a matter of contract between the parties" and "a judicial mandate to arbitrate must be predicated upon the parties' consent." Guidotti, 716 F.3d at 771 (internal citation and quotation omitted). "[I]n deciding whether a party may be compelled to arbitrate under the FAA, we first consider '(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement.'" Flintkote Co. v. Aviva PLC, 769 F.3d 215, 220 (3d Cir. 2014) (quoting Century Indem. Co., 584 F.3d at 527).

In determining whether there is a valid agreement to arbitrate, courts "turn to 'ordinary state-law principles that govern the formation of contracts.'" Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009) (quoting First Options of Chic., Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). Under Pennsylvania law,[3] a valid contract requires: "(1) a mutual manifestation of an intention to be bound, (2) terms sufficiently definite to be enforced, and (3) consideration." Id. (internal citation omitted). Plaintiff argues that because the contract is unsigned by the Defendant, it does not reflect a mutual

---

[3] The parties do not dispute that Pennsylvania law applies.

manifestation of an intention to be bound and, relatedly, it lacks consideration. She also argues that the terms of contract reflect a lack of consideration, that the Defendant has waived its right to enforce the agreement, and that the Agreement is substantively and procedurally unconscionable.

"As a general rule, signatures are not required for a binding contract unless such signing is expressly required by law or by the intent of the parties." Shovel Transfer & Storage, Inc. v. Pa. Liquor Control Bd., 739 A.2d 133, 136 (Pa. 1999) (internal citation omitted). Neither the FAA nor Pennsylvania law requires a signature in order for an arbitration clause to be enforceable. See Id.; Morina, 2014 WL 4933022, at *14. Therefore, we will need to look to the parties' intent to determine whether a signature is required in this instance.

Plaintiff argues that the existence of signature blocks for the Business Unit President and Human Resources Manager on the last page of the Agreement indicates that the parties intended for the Defendant to sign the Agreement. See Agreement at 4. A signature block alone, however, typically is not sufficient evidence that the signature of the parties are required. See Shovel Transfer & Storage, 739 A.2d at 138 ("[T]he mere presence of signature lines does not determine whether the parties intended to be bound only

7

upon the execution of the document by all the signatories."). The cases the Plaintiff cites do not hold otherwise. For example, in Fitz, the court indicated the "best evidence" to show the parties required signatures was "the presence of a signature block for the president of Islands Mechanical on the last page of the Employment Agreements." Fitz v. Islands Mechanical Contr., Inc., Civil No. 08-CV-00060, 2010 U.S. Dist. LEXIS 56743, at *14-15 (D.V.I. June 9, 2010). That case goes on, however, to note that "signature lines alone [are] insufficient proof of the parties' intent to execute the agreement in writing." Id. at *15 (alteration in the original) (internal citation and quotation omitted). The court did not find that signatures were required for that agreement to be binding, despite the inclusion of a signature block for the company president. Id.

This does not end our inquiry. "It is firmly settled that the intent of the parties to a written contract is contained in the writing itself." Shovel Transfer & Storage, 739 A.2d at 138 (internal citation omitted). In Buzzmarketing, our sister court found that a clause stating "'signatures shall suffice' to 'execute[]' the agreement ... clearly indicates the parties' intent to execute the agreement only by signing it." Buzzmarketing, LLC v. Upper Deck Co., LLC, Civil Action, No. 03-4392, 2004 U.S. Dist.

LEXIS 7966, at *9-10 (E.D. Pa. May 5, 2004). Similarly, the terms of the Agreement here indicate the parties intended for it to be signed to be enforceable. The Agreement states: "In utilizing this process and **signing this agreement**, the employee and the Company relinquish all rights to pursuing through the court the claims covered by this Agreement." Agreement at 1 (emphasis added). This is "express language" that indicates the "clear and unambiguous" intent of the parties to only give up their right to litigate in court by signing the Agreement. Shovel Transfer & Storage, 739 A.2d at 138.

The Defendant might argue that this provision only indicates the intention that the arbitration restriction requires a signature, but that the intent to enter into an agreement at all is not contingent on a signature. Defendant claims that the Plaintiff's employment is also consideration in return for the Plaintiff's promise to arbitrate claims. Because the Agreement only indicates the relinquishing of the right to go to court requires a signature and not the intent to enter into an agreement, it may be that the Plaintiff agreed to arbitrate and gave up her right to go to court in return for employment by the Defendant. This argument fails by the express terms of the Agreement. The Agreement states: "Each party's promise to resolve claims by arbitration in

accordance with the provisions of this Agreement, rather than through the courts, is consideration for the other party's like promise." Agreement at 1. Additionally, the Agreement notes that it "does not constitute a contract of employment." Agreement at 2. Therefore, the express language of the contract indicates that consideration for one party's relinquishing its rights to pursue claims in court is the other party's similar promise to relinquish the same rights, and that such rights are relinquished by signing the agreement.

## IV. Conclusion

The express terms of the Agreement indicate that the parties only intended to give up their right to bring these claims in court if they sign the Agreement. The Agreement also expressly states that this is consideration for the other party's mutual agreement. Because the Defendant did not sign the Agreement, there is no intent to be bound, nor any consideration for the Plaintiff's promise. Accordingly, we find that there is no valid contract to arbitrate the claims here. Therefore, we DENY the Defendant's Motion to Dismiss and Compel Arbitration.[4] An Order follows.

---

[4] Because we find there is no valid arbitration contract, we do not need to address the Plaintiff's other argument about consideration, whether the terms of the contract are unconscionable, or whether the Defendant waived its right to arbitrate.

1